IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA A. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:06-CV-00586-TFM |
| | ) | [wo] |
| JO ANNE B. BARNHART | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42. U.S.C. §§ 1381, *et seq.*, Patricia A. Mitchell ("Mitchell" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), and for reasons herein explained, the court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Plaintiff requests judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits and

supplemental security income.  United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. §405 (2006).  The court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.  The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence).  This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999), (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis*, 125 F.3d

at 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d

842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d

at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*,

402 U.S. at 401).

If the Commissioner's decision is supported by substantial evidence, the district court

will affirm, even if the court would have reached a contrary result as finder of fact, and even

if the court finds that the evidence preponderates against the Commissioner's decision.

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view

the record as a whole, taking into account evidence favorable as well as unfavorable to the

decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986)).

The district court will reverse a Commissioner's decision on plenary review if the

decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton*

*v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal

citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.

*Id*.; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## III. PROCEEDINGS

Plaintiff claims disability due to *left leg pain, sleep apnea, asthma, and Meniere's*

*disease*. (Tr. 16, 48).  Following initial administrative denial of her claim, plaintiff requested

a hearing before an administrative law judge ("ALJ") (Tr. 22-32).  ALJ Joseph F. Gilliland

convened an evidentiary hearing.  Plaintiff was represented by an attorney, Carl Pittman, Esq.

ALJ Gilliland received direct testimony from Plaintiff and a vocational expert, Bonnie

Cannon.  The remaining evidentiary record consisted of medical reports from treating sources

and "residual functional capacity assessments" completed by medical consultants who

reviewed plaintiff's medical records upon request of Alabama Disability Determination

Services.[1]

## IV. ADMINISTRATIVE DECISION

### A.    Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when

claimants are disabled.  20 C.F.R. §§ 404.1520, 416.920 (2005); *Phillips v. Barnhart*, 357

F.3d 1232, 1237 (11th Cir. 2004).  When a claimant is found disabled – or not – at an early

step, remaining steps are not considered.  *Id*.  This procedure is a fair and just way for

determining disability applications in conformity with the Social Security Act.  *See Bowen*

*v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. ed.2d 119 (1987) (citing *Heckler*

*v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d66 (1983)) (The use of

---

[1] Jacqueline Barrow (Tr. 167-176).  "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves."  20 C.F.R. § 404.1616(a)(2005).

the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on a claimant through Step 4. *See Phillips*, 357 F.3d at 1237-39.   As such, the claimant bears the burden of proof for the following:

(1)     Whether she is currently performing a substantial gainful activity;

(2)     Whether she has a severe impairment;

(3)     Whether that severe impairment meets or exceeds an impairment in the listings; and

(4)     Whether she can perform her past relevant work.

*Phillips*, 357 F.3d at 1237-1239.  When a claimant carries the Step 1 through Step 4 burden, the proof establishes a *prima facie* case of qualifying disability.  It is only at the fifth step that the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC").  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite her impairments, and is based on all relevant medical and other evidence.  *Id*. Morever, it can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*.

at 1239.  In order to this, the ALJ can either use the Medical Vocational Guidelines[2] ("grids") or call a vocational expert.  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.  Otherwise, the ALJ may use a vocational expert.  *Id*.  A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments.  *Id*.  In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

**B.    Findings and Conclusions**

Employing the five step process, ALJ Gilliland found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (Step 1)[3]; has severe impairments (Step 2); the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and plaintiff can perform her past

---

[2]        *See* 20 C.F.R. pt. 404 subpt. P, app. 2

[3]        Under the "Findings" section ALJ Gilliland notes "[t]he claimant has not engaged in substantial gainful activity since the alleged onset date." (Tr. 20).  However, in his analysis he does note claimant's earnings record does indicate wages in 2003, and claimant testified at the hearing that she worked until August 2003. (Tr. 17)

relevant work (Step 4).  (Tr. 20-21).  As such, Plaintiff <u>did not</u> establish her *prima facie* case,

and the fifth-step analysis is not necessary.

At Step Four, ALJ Gilliland states he evaluated Plaintiff's RFC and also received

testimony from a vocational expert regarding Plaintiff's ability to perform past relevant work.

Upon consideration of the record, including the vocational expert's testimony, ALJ Gilliland

determined Plaintiff retains the RFC to perform her past relevant work.  (Tr. 18-20).  Thus,

the inquiry ends without further evaluation.  Consequently, the ALJ found Plaintiff has not

been disabled since the alleged onset date.  (Tr. 21).

## V. ISSUES

Plaintiff raises two issues on appeal:

(1)     Whether the commissioner erred by failing to follow SSR 96-6p in
        giving great weight to the opinions of Dr. Sha, a non-treating physician,
        assessing the claimant's limitations regarding work related function
        where Dr. Sha's opinions were not based on the whole of the medical
        record; and

(2)     Whether the Commissioner erred by failing to follow SSR 96-8p in the
        RFC assessment of the claimant by not providing the appropriate
        rationale or reference to supporting evidence.

Pl. Br. at p. 1-2.

The Commissioner recharacterizes the two issues as one issue, "whether the decision

of the ALJ is supported by substantial [evidence] based on the record as a whole."  Def. Br.

at p. 4.  The Commissioner does specifically address "whether the Commissioner Gave

Excessive Weight to the Opinion of Dr. Sha" and "whether the ALJ Adequately Explained

his Residual Functional Capacity." Def. Br. at 4, 7.

## VI.  DISCUSSION AND ANALYSIS

**A.     The ALJ's determination was based on substantial evidence**.

To establish a disability based on testimony of pain and other symptoms, the claimant

must satisfy two parts of a three-part test showing:

> (1)     Evidence of an underlying medical condition; <u>and either</u>
>
> (2)     Objective medical evidence confirming the severity of the alleged pain;
> <u>or</u>
>
> (3)     That the objectively determined medical condition can reasonably be
>         expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d

1221, 1223 (11th Cir. 1991)).  If the ALJ discredits subjective testimony, he must articulate

explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*,

831 F.2d 1007, 1011 (11th Cir. 1987)).

In the case at hand, although ALJ Gilliland does not specifically cite or refer to the

language of the three-part test in *Holt*, his findings and discussion indicate that the standard

was properly applied.  *See Wilson*, 284 F.3d at1225-26 (the ALJ did not cite or refer to the

language of the three-part test in *Holt*, but the findings and discussion indicated that the

standard was applied).  Further, ALJ Gilliland cites to 20 C.F.R. § 404.1529 which "contains

the same language regarding subjective pain testimony" that the Eleventh Circuit interpreted

when initially establishing the three-part pain standard.  *Id*. at 1226 (citations omitted); *see*

*also* Tr. 18 (for ALJ Gilliland's reference to statute).  Based on the above, ALJ Gilliland clearly applied the proper pain standard.

Furthermore, ALJ Gilliland specifically articulated the following findings: "I find that the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence.  The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.  Morever, despite the allegedly disabling pain and functional limitations, there are periods without medical treatment."  (Tr. 19-20).  ALJ Gilliland provided a detailed description of Plaintiff's medical records. (Tr. 17-19).  Additionally, ALJ Gilliland provides a detailed list of Plaintiff's daily activities. (Tr. 19).  Further, Plaintiff kept her sister's children until August 2003. (Tr. 19).  Plaintiff testified she kept her sister's children, ages 4 and 6 at the time, five days a week for approximately eight (8) hours each day.  (Tr. 335-36).  Plaintiff also worked on two charter trips in 2003.  (Tr. 19, 335).  In sum, ALJ Gilliland considered Plaintiff's activities of daily living, the frequency of her symptoms, medical records, vocational expert testimony, and Plaintiff's own testimony and concluded that Plaintiff's subjective complaints were inconsistent with her testimony and medical record.

Based on the above, this court finds the ALJ made a reasonable decision to reject Plaintiff's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so.  Applying the pain standard, ALJ Gilliland properly considered Plaintiff's assessment of her pain level, and determined that it was not credible to the degree alleged

because the objective evidence did not confirm the severity of Plaintiff's alleged limitations. Consequently, the third prong of the *Holt* pain standard was not met. *Wilson*, 284 F.3d at 1226. Accordingly, the determination was based on substantial evidence and a correct application of the law.

Based on the above information, there was substantial evidence for ALJ Gilliland to determine Plaintiff can perform past relevant work (Step 4). Further, while not necessary, ALJ Gilliland also questioned the vocational expert about whether Plaintiff retained the ability to perform other work, found in significant numbers in the national economy (Step 5). (Tr. 350). The vocational expert testified Plaintiff could work as a counter attendant, hand packer, and sales attendant. (Tr. 350). The vocational expert further testified each position has a significant number of jobs available both in state and in the national economy.[4] *Id.* Based on this testimony, Plaintiff would not meet Step 5 of the five-step, burden-shifting analysis. As such, ALJ Gilliland's determination that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence.

**B.     The Application of Law**

Both parties agree that the ALJ is generally charged with discussing the opinion of non-examining experts under Social Security Ruling 96-6p. *See* Pl Br. at 6; Def. Br. at 6. It states "Administrative law judges and the Appeals Council may not ignore these opinions

---

[4]     Counter attendant - 3000 in the state and 800,000 in the national economy. Hand packer - 12,000 in the state and 800,000 in the national economy. Sales attendant - 50,000 in the state and over a million in the national economy. (Tr. 350).

and must explain the weight given to the opinions in their decisions." Social Security Ruling 96-6p.  A careful review of ALJ Gilliland's Decision shows there is no mention of the RFC assessment completed by Jacqueline E. Barrow (Exhibit 7F).  *See* Tr. 16-21.  Further, the ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor."  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  As such, ALJ Gilliland committed an error of law by not properly explaining the weight given to the opinion.

The Commissioner alleges the failure to discuss the opinion was a harmless error. Def. Br. at 7.  Harmless errors are those that do not affect the ALJ's determination - i.e. where no substantial right was affected.  *Mays v. Bowen*, 837 F.3d 1362 (5thCir. 1988) (citing *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 520 (5th Cir. 1981) (the harmless error rule is to preserve judgments and avoid waste of time)); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (finding harmless error because it did not affect the ALJ's determination that claimant was not entitled to benefits); *see also Woodard v. Apfel*, Case No. Civ.A. 99-0926-RV-L, 2001 WL 102354 FN3, 2000 U.S. Dist. LEXIS 19803 n.3 (S.D.Ala Jan. 8, 2001) (citing *Curry, Mays,* and *Gulf States Utilities*).

Generally, a failure to follow the requirements of a Social Security Ruling would warrant remand.  *See, e.g., Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) ("Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to [claimant's] RFC, we cannot even evaluate the Commissioner's

contention that the ALJ's error was harmless."). However, in some circumstances, the error is harmless. This is such a case.

The omission of a specific reference to Exhibit 7F, while in error, does not affect a substantial right or effect the ALJ's determination Plaintiff was not entitled to benefits. In fact, Exhibit 7F itself weighs against Plaintiff and calls into question her credibility. (Tr. 172). Specifically, on page 6 it states "The [claimant] is alleging severe impairment that is affecting her functioning. Medical information [received] does not support the claimant's statement. At this time the [claimant's] statements are partially credible." (Tr. 172). Further, in Ms. Barrow's judgment, the severity or duration of the symptom(s) is disproportionate to the expected severity or expected duration on the basis of claimant's medically determinable impairment(s).[5] *Id.* Moreover, as noted by the Commissioner, the report itself appears to have been completed by a non-physician expert. (Tr. 174). The disability specialist consulted, Jacqueline E. Barrow, does not appear to be a physician.[6] (Tr. 174, 176). Regardless, there is still sufficient evidence that Plaintiff was not prejudiced by the fact Exhibit 7F was not specifically addressed by ALJ Gilliland, and the omission of specific references is harmless error.

## VII. CONCLUSION

---

[5]        Identified by Circling of Letter "B." (Tr. 172).

[6]        Ms. Barrow does make a reference which states "consulted c [sic] Dr. Stephenson and advised not enough to rate." (Tr. 176).

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion and Order*, the Court concludes that the ALJ's non-disability determination and denial of benefits is supported by substantial evidence and the error law was harmless.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED**.  A separate judgment is entered herewith.

DONE this 1st day of February, 2007.

Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE